STATE of Missouri, Respondent,

v.

**Robert W. CUTSHALL, Appellant.**

**No. 51986.**

Supreme Court of Missouri,
Division No. 2.

Nov. 14, 1966.

Norman H. Anderson, Atty. Gen., Jefferson City, McCormick V. Wilson, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

Robert G. Duncan, Lewis E. Pierce, Pierce, Duncan, Beitling & Shute, Kansas City, for appellant.

FINCH, Judge.

Defendant was convicted of manslaughter under § 559.070 [1] and was assessed punishment of three months in the county jail and a fine of one hundred dollars. We have jurisdiction over his appeal because the conviction was for a felony. Article V, § 3, Constitution of Missouri.

The information charged culpable negligence in the operation of a motor vehicle on January 17, 1965, causing it to collide with an automobile driven by one Arthur L. Thompson and resulting in fatal injuries to Thompson.

The collision in question occurred on the Paseo Bridge. At that point there are separate north and southbound lanes divided by a concrete median strip 10 inches in height and four feet in width. The north and southbound lanes were each 26 feet wide.

Defendant on appeal asserts three alleged errors, the first of which is denial of his motion for acquittal at the close of all the evidence.

The state's evidence will support the following summary: Sometime between 9:00 and 10:00 p. m., defendant drove his Pontiac station wagon north from Kansas City onto the approach to the Paseo Bridge. While he was still on the approach, he passed to the left of an automobile traveling in the same direction. Mr. Dillingham, the driver of that car, was traveling approximately 50 miles per hour, and he estimated the speed of the defendant's Pontiac at 65 to 70 miles per hour. There was a posted speed limit at that point of 55 miles per hour. Shortly after defendant's Pontiac had passed Dillingham, it swerved left and sideswiped the median strip divider. It then veered away from the median strip and swerved or fishtailed back and forth across the highway until it hit the right-hand railing of the bridge. The Pontiac then turned back to the left at about a 45 degree angle and crossed the median strip into the southbound lane of travel. It traveled across the southbound lane and hit the west bridge railing, after which it bounced back toward the east and collided with the Oldsmobile, driven by the deceased Thompson. Mr.

1. All statutory references are to RSMo 1959 and V.A.M.S.

Thompson was thrown out of the car and into the northbound lane, receiving injuries from which he died the following day.

Dillingham estimated a distance of between 300 and 400 yards from the time he first saw defendant's Pontiac (apparently as it passed him since he had not seen it behind him) until it crossed the median strip. He did not fix in feet or yards the distance the Pontiac traveled from the time it sideswiped the center median until it crossed into the southbound lane, but he did say that it sideswiped the median shortly after passing him. He further testified that the Pontiac swerved back and forth for about half of the length of the bridge before it hit the right-hand railing. The length of the bridge itself was not shown in the evidence. According to Dillingham, the brake lights of the Pontiac never came on and the speed of the car did not slacken. The only tire marks were scuff marks where the Pontiac crossed the median strip and similar marks in the southbound lane of traffic. The distance between the scuff marks on the median strip and those made by the Oldsmobile where it was shoved backward was 200 feet.

The evidence disclosed that the impact of the Pontiac with the Oldsmobile knocked it backward approximately 20 feet into the front of a Dodge which had been following but which was stopped. Considerable damage was done to the front end and right side of the Oldsmobile, and various parts of the front end of the Dodge which was following were mashed in. The front end of the Pontiac was badly damaged and it came to rest on its side.

Two police officers who testified stated that they were at the scene of the accident within a few minutes after it happened and that they talked to defendant and smelled the odor of alcoholic beverages on his breath. Officer Matthews, who assisted defendant into an ambulance, also testified that it appeared to him that defendant was intoxicated.

The rule in Missouri, as announced in State v. Schneiders, 345 Mo. 899, 137 S.W. 2d 439, is "that negligence to be deemed culpable within the meaning of the statute and, therefore, criminal, is something more than ordinary, common-law, or actionable negligence. The culpability necessary to support a manslaughter charge must be so great as to indicate a reckless or utter disregard for human life." State v. Feger, Mo., 340 S.W.2d 716, 721; State v. Mayabb, Mo., 316 S.W.2d 609, 612; State v. Duncan, Mo., 316 S.W.2d 613, 615.

■ Under the evidence herein, a jury could have concluded that defendant was not guilty of criminal negligence but was guilty of negligence which would involve civil liability. Defendant himself testified that he never exceeded a speed of 55 miles per hour and had had nothing to drink and that he simply lost control of his automobile when he sideswiped the median. In this he was corroborated by Bill Terry, his passenger. On the other hand, we cannot conclude as a matter of law that defendant was guilty of no more than ordinary negligence. State v. Studebaker, 334 Mo. 471, 66 S.W.2d 877, 882. The jury could have found that defendant was driving after he had been drinking and was under the influence of alcohol and perhaps intoxicated; that he was traveling 65 to 70 miles per hour in a 55 mile zone on the Paseo Bridge; that he swerved into the median strip; that he weaved or fishtailed back and forth for a considerable portion of 300 to 400 yards until he hit the east railing of the bridge; that he then swerved back to the left and crossed the median divider (exploded across it, as one witness put it); that he crossed the southbound lane into the west bridge railing and then swerved or bounced back right and hit the southbound Oldsmobile 200 feet north of where he crossed the median strip, striking it with sufficient force to knock it backwards a distance of 20 feet and into another automobile; that considerable damage was done to all the vehicles; and that the impact knocked

Thompson out of his Oldsmobile, across the median strip and onto the northbound traffic lane. The jury could have found that such conduct amounted to culpable negligence as defined in the court's instructions. Accordingly, we hold that under the evidence a submissible case was made.

■ Secondly, defendant asserts that the information on which he was tried was fatally defective in that it alleged that he had acted wilfully and through culpable negligence. Such allegations, defendant claims, are inconsistent and repugnant.

The information, after the preliminary allegations, charges that "Robert W. Cutshall did then and there wilfully and feloniously on the Paseo Bridge did drive and operate a motor vehicle, carelessly, recklessly, feloniously and with culpable negligence causing same to collide violently with an automobile driven by Arthur L. Thompson and by reason of the collision aforesaid, one Arthur L. Thompson did receive numerous wounds and mortal injuries in and upon the head and body, which wounds and injuries caused the said Arthur L. Thompson on the 18th day of January, 1965, then and there to die. The said Robert W. Cutshall in the manner aforesaid and by means aforesaid, carelessly, recklessly, feloniously and with culpable negligence did kill and slay the said Arthur L. Thompson, * * *."

We do not believe the defendant was misled in any way by the inclusion of the word "wilfully" in this information. It is abundantly clear that defendant was charged with manslaughter as a result of culpable negligence.

Defendant cites the early case of State v. Lockwood, 119 Mo. 463, 24 S.W. 1015, decided in 1894. At that time the statutes provided four degrees of manslaughter, and defendant was charged with manslaughter in the fourth degree by wilfully and with culpable negligence shooting the deceased.

The court sustained a motion to quash on the ground that the information was bad for inconsistency. We are of the opinion that the Lockwood case does not govern the result here. The statute involved is different and the information in Lockwood repeatedly used the word "wilfully" throughout the information, whereas that is not true in the information against the defendant herein. Furthermore, there was a tendency at that time to be more technical in the construction of the language in pleadings than at the present time. In our judgment, the word "wilfully" in the information against the defendant can and should be treated as mere surplusage. The information was sufficient.

■ Defendant's final contention is that the court erred in refusing his Instruction "A" and failing, in the alternative, to otherwise instruct the jury on the defense of accident.

In the case of State v. Sumpter, Mo., 184 S.W.2d 1005, 1006, this court stated: "Defendant's complaint with respect to the failure of the court to instruct on homicide excusable on account of an accident is well taken. Defendant was entitled to have his established defense submitted. The homicide stood confessed. He testified he was operating his automobile on the north, his side, of the highway at about 25 or 30 miles an hour; that he was not going any place in particular; that he decided to turn around and went over on the south side of the road; that he saw the man dressed in light clothes (Leonard), was watching him and did not see his brother, who was farther out in the highway, and first knew he hit someone when a fender struck Richard Rulo. Defendant might have been guilty of simple negligence under this testimony but was not, as a matter of law, guilty of that culpable negligence essential to a conviction for manslaughter. He was entitled to have his theory of innocence submitted to the jury. Sec. 4070(4th), R.S.1939, Mo. R.S.A.; Secs. 4380, 4381, R.S.1939, Mo.

R.S.A.; State v. Crowley, 345 Mo. 1177, 1182(I), 139 S.W.2d 473, 475, 476[1, 2], citing authority." See also State v. Bradley, 352 Mo. 780, 179 S.W.2d 98, which held that where the evidence warrants, the court must give an accidental homicide instruction, whether requested or not, as a part of the law of the case, and State v. Vincent, Mo., 321 S.W.2d 439, and State v. Watson, Mo., 364 S.W.2d 519, which recognized the rule.

We are of the opinion that Instruction "A" offered by the defendant was not a good instruction. The evidence in this case, however, did justify and require an instruction on accidental homicide under the rule announced in Sumpter and Bradley. Defendant testified that he never exceeded 55 miles per hour; that he had had nothing to drink; that he reached in his pocket for change to use at the toll gate located at the north end of the Paseo Bridge; that he did not have the exact change and intended to pull to the right to get into a lane where change was made; that he glanced back to see whether the way was clear to pull to the right; that he saw a car or a shadow which he took to be a car and hence he cut back to the left; that when he did so he sideswiped the center median, causing him to lose control of his car and resulting in the accident which occurred. In this defendant was corroborated by his passenger, Bill Terry. Under this evidence, defendant might have been guilty of negligence for which civil recovery could be had, but he was not, as a matter of law, guilty of that culpable negligence essential to a conviction for manslaughter. Consequently, an accidental homicide instruction should have been given as part of the law of the case.

■ The state's brief contends that this point was not preserved in the motion for new trial. We have concluded that the motion for new trial did raise the matter sufficiently so that both the trial court and this court would understand defendant's complaint, and we hold that it was error not to give a proper accidental homicide instruction.

Reversed and remanded.

All of the Judges concur.